**No. 23-1922**

# In the
# United States Court of Appeals
# for the Federal Circuit

BEARBOX LLC, AUSTIN STORMS,

*Plaintiffs-Appellants,*

v.

LANCIUM LLC, MICHAEL T. McNAMARA, RAYMOND E. CLINE, JR.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Delaware, No. 1:21-cv-00534-GBW-CJB
The Honorable Gregory B. Williams

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS
## BEARBOX LLC and AUSTIN STORMS

BENJAMIN T. HORTON
JOHN R. LABBE
RAYMOND R. RICORDATI, III
CHELSEA MURRAY
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

*Counsel for Plaintiffs-Appellants
BearBox LLC and Austin Storms*

November 8, 2023

 

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1922 |
| **Short Case Caption** | BearBox LLC v. Lancium LLC |
| **Filing Party/Entity** | Plaintiffs-Appellants BearBox LLC and Austin Storms |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/08/2023

Signature: /s/ Benjamin T. Horton

Name: Benjamin T. Horton

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| BearBox LLC | | |
| Austin Storms | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**FORM 9. Certificate of Interest**

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable       ☐    Additional pages attached

| | | |
|---|---|---|
| Marshall Gerstein & Borun: John J. Lucas | | |
| Ashby & Geddes: Andrew C. Mayo | | |
| | | |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☑   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable       ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ...............................................................................1

ARGUMENT ......................................................................................2

I.     Federal patent law does not preempt BearBox's conversion claim ...............2

    A.     Preemption does not apply because BearBox's state-law conversion claim is not based on acts of patent infringement ..............2

    B.     The district court correctly rejected Lancium's alternative grounds for affirmance ..........................................................3

    C.     Reversal of the district court's conversion decision requires remand for a jury trial on all claims ......................................5

II.    Correction of inventorship.......................................................................7

    A.     The district court abused its discretion in striking McClellan's supplemental report ...........................................9

        1.     McClellan's supplement did not include new opinions and it was error for the district court to conclude otherwise ...........................................................11

        2.     The *Pennypack* factors were not properly applied ...................13

    B.     The district court's inventorship determinations should be reversed or at least vacated..............................................16

        1.     Storms' testimony was improperly excluded as hearsay and a proffer is not necessary....................................17

        2.     The district court considered less than all the evidence presented and what it did consider it analyzed piecemeal rather than as a whole ..........................20

        3.     The district court impermissibly analyzed the claim elements in isolation rather than in combination....................21

4.    The district court's prior independent conception findings for Lancium were also piecemeal and not corroborated ...........24

5.    The district court applied a heightened, reduction-to-practice standard to BearBox's conception evidence ...............25

CONCLUSION ....................................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Blue Gentian, LLC v. Tristar Prod., Inc.*,
   70 F.4th 1351 (Fed. Cir. 2023) ............................................................ 8, 20, 24

*Bureau Veritas Commodities & Trade, Inc. v. Nanoo*,
   No. CV 20-3374, 2021 WL 2142466 (E.D. La. May 26, 2021) ....................5

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
   725 F.3d 1341 (Fed. Cir. 2013) ....................................................................15

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
   807 F.2d 955 (Fed. Cir. 1986) ........................................................................8

*F.G. Bruschweiler (Antiques), Ltd. v. GBA Great British Antiques, L.L.C.*,
   860 So. 2d 644 (La. Ct. App. 5 Cir. 2003) .....................................................4

*General Electric Co. v. Wilkins*,
   750 F.3d 1324 (Fed. Cir. 2014) ....................................................................21

*GPNE Corp. v. Apple Inc.*,
   830 F.3d 1365 (Fed. Cir. 2016) ....................................................................10

*Hospira v. Fresenius*,
   946 F.3d 1322 (Fed. Cir. 2020) ......................................................................7

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986) ....................................................................25

*Intel Corp. v. U.S. Int'l Trade Comm.*,
   946 F.2d 821 (Fed. Cir. 1991) ........................................................................8

*Intell. Ventures II LLC v. Motorola Mobility LLC*,
   692 F. App'x 626 (Fed. Cir. 2017)..................................................................8

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
   No. CIV. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25,
   2013) ............................................................................................................14

*Knorr v. Pearson*,
   671 F.2d 1368 (C.C.P.A. 1982) .............................................................. 17, 18

*NFC Tech., LLC v. Matal*,
     871 F.3d 1367 (Fed. Cir. 2017) ....................................................................20

*Reckitt Benckiser Inc. v. Tris Pharma, Inc.*,
     No. CIV.A. 09-3125 FLW, 2011 WL 6722707 (D.N.J. Dec. 21, 2011).......14

*REG Synthetic Fuels, LLC v. Neste Oil Oyj*,
     841 F.3d 954 (Fed. Cir. 2016) ......................................................................17

*Shum v. Intel Corp.*,
     499 F.3d 1272 (Fed. Cir. 2007) ...................................................................5, 6

*South Central Bell Telephone Co. v. Barthelemy*,
     643 So. 2d 1240 (La. 1994) .............................................................................4

*State v. Williamson*,
     81 So. 3d 156 (La. App. 5th Cir. 2011) ..........................................................4

*Suffolk Techs., LLC v. AOL Inc.*,
     752 F.3d 1358 (Fed. Cir. 2014) ....................................................................14

*TransWeb, LLC v. 3M Innovative Props.*,
     812 F.3d 1295 (Fed. Cir. 2016) ...................................................................7, 8

*United States v. Naholi*,
     911 F.3d 897 (8th Cir. 2018) ........................................................................19

*United States v. Roach*,
     896 F.3d 1185 (10th Cir. 2018) ....................................................................19

*Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*,
     196 F.3d 1366 (Fed. Cir. 1999) ......................................................................2

## RULES

Fed. R. Evid. 103(a)(2) ............................................................................18

## **INTRODUCTION**

Federal patent law does not preempt BearBox's conversion claim because the state-law claim is based on distinct elements not including inventorship. But because the factual issues related to inventorship and conversion overlap, the district court erred in denying BearBox a jury trial on both its conversion and inventorship claims.

Storms conceived of a system that would grant an option to a wind farm to use pre-purchased electricity, over fixed time intervals and in fixed amounts, to either mine Bitcoin or sell that electricity to the grid, using 272 individually controllable Bitcoin miners stacked in a shipping container operable from anywhere in the world. He documented his work with contemporaneous, time-stamped source code files, photos, drawings, and other documentation. During development, Storms simulated portions of his concept using source code and a single Bitcoin miner in his apartment, choosing representative values mimicking wind farm operations to model how aspects of his system might work in the real world. Storms then distilled his concept into three documents that he emailed to Lancium after describing his invention in detail at a dinner in May 2019.

In this case, the district court missed the forest for the trees, analyzing Storms' single-miner simulation as though it was the only evidence relevant to the mental part of his conception, and crediting Storms only for what the simulation

accomplished not for what it, together with the rest of the documents, represented as Storms' mental possessions. The only other Storms' documents the district court analyzed were isolated, divorced them from the context of the rest of his work, and conversations Storms had with third parties and Lancium itself. The district court performed this analysis claim element-by-element, rather than viewing the elements in combination. The subsequent conclusions are flawed, even incompatible with Lancium's own contentions, and this appeal followed.

## ARGUMENT

### I.  Federal patent law does not preempt BearBox's conversion claim

#### A.  Preemption does not apply because BearBox's state-law conversion claim is not based on acts of patent infringement

The fact that some information from BearBox's converted documents may have found its way into the patent-in-suit does not mean the conversion claim is preempted by federal patent law. As this Court has held, federal patent law only preempts a state-law claim if it "purports to define rights based on inventorship." *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999). But federal patent law may be applied in deciding a state-law claim without preempting the claim. *Id.* at 1371-74. Here, BearBox's conversion claim is based on different elements than its inventorship claim because it is focused on ownership of property, not inventorship.

**B.     The district court correctly rejected Lancium's alternative grounds for affirmance**

Before it dismissed BearBox's conversion count based on preemption, the district court correctly rejected Lancium's arguments that the conversion count was barred by the statute of limitations, Appx79-84, or Louisiana law, Appx5957-5965 (overruling objections to Magistrate Judge's report and recommendation, Appx2506-2567).

First, with respect to the statute of limitations, the district court correctly found that BearBox's conversion claim can "benefit from the Original Complaint's April 14, 2021 filing date," which is within one year of August 2020 when Lancium contends that BearBox was on notice of its conversion claim. Appx83. The facts underlying the conversion claim are part of the same transaction or occurrence that underlie all of the claims in BearBox's original complaint. Appx81-83. Moreover, Lancium's entire argument hinges on Storms' supposed admission at trial that he was aware of all of his allegations in this case as of August 2020. But Lancium never made this argument to the district court, and Storms' testimony is ambiguous, at best. The district court could have reasonably concluded that Storms only meant that he was aware of the allegations supporting his inventorship claims—the only claims at issue at trial—in August 2020, not his conversion claim. And to the extent the same facts underlie both claims, Storms

3

filed his lawsuit within one year of August 2020, and all claims relate back to the original complaint.

Second, the district court correctly rejected Lancium's narrow and strained reading of Louisiana law under which Lancium argues that BearBox could not state a claim for conversion because it retained copies of the converted property. The district court held that "conversion under Louisiana law includes unlawfully interfering with a plaintiff's ownership of movable property regardless of whether the plaintiff retains a copy of that movable property." Appx5963. As the district court ruled, "conversion is a broadly defined tort that seeks to remedy 'acts inconsistent with the owner's right.'" Appx5962 (quoting *F.G. Bruschweiler (Antiques), Ltd. v. GBA Great British Antiques, L.L.C.*, 860 So. 2d 644, 649 (La. Ct. App. 5 Cir. 2003)).

Indeed, Lancium's argument is impossible to reconcile with Louisiana law that recognizes that electronic files can be the subject of a conversion claim. *South Central Bell Telephone Co. v. Barthelemy*, 643 So. 2d 1240, 1246 (La. 1994) (finding that digital information "is not merely knowledge, but rather is knowledge recorded in a physical form which has physical existence, takes up space on [a] tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses"); *State v. Williamson*, 81 So. 3d 156 (La. App. 5th Cir. 2011) (holding that electronically stored AutoCAD files are protected by Louisiana conversion

4

law); *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021
WL 2142466, at *13 (E.D. La. May 26, 2021) (holding that electronic "customer
lists, financial information, and Outlook files" are properly the subject of a
Louisiana conversion claim). In the case of electronic files, the conversion plaintiff
will routinely retain an electronic copy of converted property, yet this is not fatal to
a claim of conversion under Louisiana law.

### C.    Reversal of the district court's conversion decision requires remand for a jury trial on all claims

The district court denied a jury trial only because it dismissed BearBox's
conversion claim. Immediately after granting summary judgment dismissing the
conversion count, Appx90-91, the district court ordered that the previously
scheduled jury trial would be a bench trial because there is no right to a jury trial
for "an action for correction of inventorship under § 256, *standing alone*."
Appx6074-6075 (quoting *Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir.
2007) (emphasis added). While the district court relied on *Shum* to find that
BearBox had no right to a jury trial, that same case says that a party has a right to a
jury trial on the issue of inventorship where common factual issues underlie the
inventorship claim and a state-law legal claim. *Shum*, 499 F.3d at 1279. The
district court never decided whether the claims should be bifurcated, only that
inventorship, standing alone, need not be tried to a jury. Appx89 (denying motion
to bifurcate as "moot").

Although Lancium correctly notes that BearBox's conversion claim is based on misuse of its materials containing information that Lancium did not include in the patent-in-suit, there are nevertheless common factual issues between the conversion and inventorship claims. For example, whether Storms communicated anything of value to Lancium or whether he merely communicated documents reflecting prior art methods, as Lancium contends, is a common issue of fact. Storms communicated all of this information to Lancium at the same time as part of the same oral and written communications. Further, the finder of fact must decide common issues about how Lancium used BearBox's documents and information, relying on findings about the same documents and testimony about Lancium's pursuit of the patent-in-suit and its commercialization and unauthorized use of the converted property. The common issue of whether Storms contributed anything of value to Lancium presents intertwined factual issues that a jury should have resolved for all claims.

Accordingly, where deciding inventorship will resolve the common factual question of whether Storms communicated anything of value to Lancium, a single fact-finder (a jury) should decide both claims. *See Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007) (reversing district court's decision to try inventorship before a jury trial on a fraud claim due to "commonality . . . between the factual issues underlying the inventorship and fraud claims").

## II.    Correction of inventorship

Lancium's glib suggestion that BearBox asks to punish the district court for not writing a sentence stating "the evidence overall does not corroborate" misses the point. The district court's analysis was flawed for several reasons; adding a single conclusory sentence would not save it.

Lancium's cites *Hospira* and repeatedly argues that if there are multiple views of the evidence the fact-finder's conclusions cannot be disturbed. Red Br. at 27. This overstates the holding in *Hospira* and, more importantly, if true would effectively immunize district courts from review. This is not the law. In *Hospira*, the court held that Hospira "disagree[d] with the factual findings of the district court" but did not identify any contrary evidence in the record. *Hospira v. Fresenius*, 946 F.3d 1322, 1330 (Fed. Cir. 2020). That is not the case here.

In addition, BearBox's appeal goes beyond disagreeing with fact findings. The district court failed to consider facts and applied the incorrect test to the facts it did consider. Lancium calls this a "piecemeal theme." Red Br. at 57. It is also known as the Rule of Reason. *TransWeb, LLC v. 3M Innovative Props.*, 812 F.3d 1295, 1302 (Fed. Cir. 2016) (the Rule of Reason for corroboration of conception requires examination of all the evidence "taken as a whole.").

The district court also analyzed the claims element-by-element instead of in combination, as the law requires. This is impermissible because it is also

inconsistent with the Rule of Reason. *Intell. Ventures II LLC v. Motorola Mobility LLC*, 692 F. App'x 626, 628 (Fed. Cir. 2017) (Such an "overly-narrow, element-focused attack [i]s improper because it is inconsistent with the required rule of reason analysis."); *Blue Gentian, LLC v. Tristar Prod., Inc.*, 70 F.4th 1351, 1362 (Fed. Cir. 2023) ("[t]he proper lens requires considering the elements in combination, not in isolation."). This Court "ha[s] repeatedly rejected an element-wise attack on corroboration" and has stated "in clear terms" that it would not matter if "none of the corroborating evidence constitutes definitive proof of [a purported inventor]'s account or discloses each claim limitation as written" because "the corroboration requirement has never been so demanding." *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1302 (Fed. Cir. 2016).

This type of piecemeal approach has been repeatedly rejected because it violates fundamental concepts of patent law. Inventions are almost always a collection of known elements combined in a novel way. *Intel Corp. v. U.S. Int'l Trade Comm.*, 946 F.2d 821, 842 (Fed. Cir. 1991) ("Virtually all inventions are combinations and virtually all are combinations of old elements."). "Casting an invention as 'a combination of old elements' leads improperly to an analysis of the claimed invention by the parts, not by the whole." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 959 (Fed. Cir. 1986).

Lancium barely contests this, arguing first that the error should be overlooked because the district court simply followed the structure of the parties' briefing or, alternatively, that the district court did not analyze the claims element-by-element because the claim elements "build on each other." Resp. at 57. Even if the claims do build on each other the district court's analysis does not.

Finally, rather than address BearBox's arguments as to why the district court abused its discretion in striking McClellan's supplement, setting into motion a series of events that influenced the trial outcome, Lancium repeats, nearly verbatim, the same positions it took before the district court, still without authority supporting the extreme sanction of striking a supplement under the facts of this case or anything remotely resembling them.

## A. The district court abused its discretion in striking McClellan's supplemental report

Lancium raised a claim construction dispute for the first time eight months after the claim construction phase of the case ended. Appx5954, Appx1476. The district court entertained that late request and subsequently issued a Markman ruling five weeks before trial. BearBox's expert, McClellan, served a supplemental report synthesizing the *Markman* order thirteen days later, which the district court said included new opinions and struck for "uncurable" prejudice due to the "strained schedule." Appx96. Lancium has not cited authority that supports striking an expert's supplement under these facts, and BearBox has found none.

Lancium offers few justifications for the district court's abuse of discretion, including that BearBox should have known there was a claim construction dispute (although apparently not even Lancium believed there was one until eight months after-the-fact), Lancium had generically "reserved the right" to pursue claim construction in the future (at the end of a letter telling the district court claim construction was not necessary), and weakly suggests in a footnote that claim construction disputes can be raised "up to and including trial."[1] Also notable is what Lancium does *not* offer.

Lancium does not offer any response to BearBox's argument that it fully and fairly disclosed its understanding of the scope of "power option agreement" and "minimum power threshold" before and during the claim construction phase of the case, through interrogatory responses, fact and expert witness testimony, and McClellan's original expert reports. Appx6817-6818, Appx9003-9028. Lancium failed to raise a dispute when it would have been appropriate to do so.

Lancium does not offer any response to the fact that its expert, Ehsani, said he would supplement his report if "any of Plaintiffs' experts use a different

---

[1] Lancium mischaracterizes *GPNE* as justification for raising a claim construction dispute for the first time after expert discovery and eight months after the close of claim construction phase of the case. In *GPNE*, however, a party was simply found to not have waived its right to appeal a claim construction argument that was raised "at Markman" which was necessarily "before the case went to the jury." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016).

construction." Appx5846. After being in possession of McClellan's reports for

months, Ehsani did not supplement and Lancium did not otherwise raise a claim

construction dispute. Nor does Lancium offer any response to BearBox's detailed

explanation of McClellan's original opinion (that Storms conceived of a system in

which *many different entities* could hold the option in a power option agreement,

*including a power entity* like a wind farm) compared to his supplemental report

(that his original opinion included an opinion that Storms conceived of a system in

which the wind farm, i.e. a power entity, holds the option in a power option

agreement and was therefore consistent with the district court's *Markman* order).

Blue Br. at 40-44.

Finally, Lancium does not offer any response to BearBox's explanation of

the out-of-context deposition quotes that formed the basis of Lancium's attack and

the district court's decisions regarding McClellan's opinions. Blue Br. at 41-43.

### 1.     McClellan's supplement did not include new opinions and it was error for the district court to conclude otherwise

Lancium argues its late pursuit of claim construction, following McClellan's

deposition, was appropriate because McClellan did not provide "any explanation in

his reports of what the 'plain and ordinary meanings' actually were" and "Plaintiffs

do not assert otherwise." Red Br. at 45. This is not true. BearBox walked through

key portions of McClellan's original reports and his deposition detailing his

understanding of the scope of "power option agreement" and "minimum power

11

threshold," including McClellan's consideration of the '433 Patent specification, Storms' testimony, McClellan's deposition testimony, and McCamant's input on Qualified Scheduling Entities. Blue Br. at 21-25. BearBox explained that McClellan's original opinion was that Storms conceived of a system in which multiple entities, including a wind farm (i.e. a "power entity") could hold the option in a power option agreement. Blue Br. 21-25. Lancium does not address these points; Lancium only quotes from the district court's order that is subject to this appeal. Red Br. at 45-46.

Immediately after arguing that McClellan's original reports do not explain his understanding of the claim terms, Lancium concedes McClellan's reports do, in fact, reveal his understanding and disclosed the opinions the district court held were not disclosed. Lancium complains, however, that those disclosures are "cherry-picking" and "snapshots." Red Br. at 47.

Despite criticizing cherry-picked snapshots, Lancium used exactly that to reduce McClellan's opinions to a handful of deposition quotes in which McClellan thought he was being asked about ERCOT's commercial application of the claimed invention. *See, e.g.*, Blue Br. at 24-25. And despite Lancium's suggestion to the contrary (without citation), the district court gave no indication in striking McClellan's supplement that it was relying on anything more than those curated

12

quotes. The district court's statements were unequivocal, and the citations were not

exemplary.

> Dr. McClellan was previously of the opinion that the
> load, not the power entity, held the option in a power
> option agreement. See McClellan Dep. Tr. at 157:1-18.
>
> He previously opined that a load was not required to use
> the 'minimum power threshold.' see D.I. 151, Ex. 5 at
> 84:18-85:1

Appx93-94.

This mischaracterization of McClellan's opinions was improper when

Lancium presented it, and it was error for the district court to adopt it.

## 2.     The *Pennypack* factors were not properly applied

Lancium argues the *Pennypack* factors were properly applied, and that the

district court's bad faith finding was supported because McClellan was on notice

of a claim construction dispute months earlier, and therefore he "wait[ed] five

months after issuing [his] reply report ... to issue his 'supplemental' report."[2] Red

Br. at 49. This is incorrect. At the time of his reply report, McClellan was no more

on notice of a claim construction dispute than Ehsani, who promised to (but did

---

[2] Lancium also argues *per se* bad faith because McClellan's served his
supplemental expert report after the Scheduling Order deadline, a schedule which
was negotiated and proposed when the parties had previously, and for many
months, agreed that claim construction was not necessary. Lancium, in fact,
violated that same Scheduling Order by request claim construction eight months
after the agreed-upon deadline. Blue Br. 25-27.

not) supplement if he thought McClellan "use[d] a different construction."

Appx5846. The portion of McClellan's reply report that Lancium argues is

evidence that McClellan "acknowledged [a] claim construction dispute" says no

such thing. Red Br. at 49; *see, e.g.*, Appx2858-2859, ¶ 86 ("Ehsani alleges I

fundamentally misunderstand the claim. I disagree ..."). In any event, Lancium

fails to address why, if BearBox was on notice of a claim construction dispute after

receiving Ehsani's report, Lancium was *not* on notice of the same dispute months

before raising it. Lancium goes on to cite the same cases BearBox distinguished,

making no effort to address those distinctions. Blue Br. at 46-47. Lancium cites

four new cases, each is distinguishable and at least one supports BearBox's

position.[3]

---

[3] Lancium Response cites four cases not previously relied upon. None are remotely close to the facts or posture of this case. In *Reckitt*, a supplemental expert report offered after the close of expert discovery was excluded as having new opinions on newly available test data that the producing party earlier said would not require "adjust[ing] the schedule to accommodate." *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, No. CIV.A. 09-3125 FLW, 2011 WL 6722707, at *3 (D.N.J. Dec. 21, 2011). This case had no late produced test data and corresponding conditions. In *INVISTA*, the court struck portions of defendant's expert's declaration opining for the first time that the defendant's own core technical documents did not sufficiently disclose the accused composition, despite having previously certified that they had. *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. CIV. 11-1007-SLR-CJB, 2013 WL 3216109, at *5 (D. Del. June 25, 2013). This case involves no such dispute. In *Suffolk Technologies*, the district court's reason for excluding a supplemental expert report is that the expert "went from having no opinion before claim construction to having an opinion after claim construction," and the "intervening claim construction … did not warrant such a change." *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1366 (Fed. Cir. 2014). In this case, McClellan

Finally, the district court did not consider importance of the exclusion under *Pennypack*, as Lancium suggests, with a footnote in which the district court said if McClellan's supplement had no new opinions "its exclusion would be harmless." Resp. at 50. This is a red herring for at least two reasons. First, the law is clear that an expert may supplement a report to "elaborate," "clarify," and offer "further detail." Blue Br. at 40. Striking McClellan's supplement deprived BearBox of the opportunity to clarify McClellan's original opinions with the benefit of the district court's construction claim construction, including the 78 words the district court used to define "power option agreement." Appx6011.

Second, the harm done by the district court's order went beyond striking the supplement because, in doing so, the district court mischaracterized McClellan's original opinions. The district court held, incorrectly, that McClellan opined that only the load holds the option in a "power option agreement" and that "minimum power thresholds" need not be "used." Appx93-94. Therefore, any subsequent

---

held opinions on the same subject matter before and after claim construction. He did not go from having no opinion to having an opinion. Finally, in *Cheese Systems*, the expert's supplement was excluded because "the proffering party offer[ed] no excuses for its untimely disclosures. *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1355 (Fed. Cir. 2013). Here, BearBox maintains that McClellan's supplement was offered to incorporate the district court's claim construction following a dispute raised by Lancium for the first time after the close of expert discovery. Even in *Cheese Systems*, the district court declined to exclude portions of the supplemental report that "simply provided greater detail on prior opinions." *Id.*

comparisons involving McClellan's original opinions were tainted, including the district court's findings regarding McClellan's trial testimony, and ultimately the "inconsistencies" that were the foundation of the district court's credibility findings against BearBox. *See, e.g.*, Appx33 ("multiple inconsistencies between Dr. McClellan's reports, deposition testimony, and trial testimony").

Finally, Lancium goes too far in its emphasis on the "uncurable" prejudice caused by McClellan's supplement. Red Br. 50-51. Lancium requested claim construction eight months after it was required to do so, and the district court did not construe those terms until five weeks before trial. McClellan offered his supplemental report clarifying his original opinions in the context of the constructions thirteen days later. Any prejudice due to timing was not caused by BearBox, and there were any number of solutions to cure prejudice that were rejected or not considered at all.

### B.    The district court's inventorship determinations should be reversed or at least vacated

Lancium knocks down a strawman in arguing that BearBox "overinflates" the importance of an alleged inventor's testimony, and that his testimony alone is not enough. Red Br. at 51-52. In doing so, Lancium avoids addressing the district court's errors: an alleged inventor's testimony cannot be ignored or excluded as hearsay.

16

### 1.    Storms' testimony was improperly excluded as hearsay and a proffer is not necessary

Lancium doubles down on its position that an alleged inventor's testimony as to what he communicated to another about the claimed invention is "classic hearsay" offered for the truth of the matter asserted even though this Court has said otherwise. Red Br. at 53; *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954 (Fed. Cir. 2016). Lancium argues *REG* is distinguishable because it dealt with an email, which was corroborating evidence, and not oral communications. Red Br. at 53. This is not what *REG* says nor is *REG* so limited in its holding or reasoning.

In *REG*, the Court said that the email was not offered for the truth of the matter, but rather was relevant evidence of the alleged inventor's state of mind and *what* the inventor communicated (regardless of the truth of that communication). *REG*, 841 F.3d at 964 ("The act of writing and sending the email is, by itself, probative evidence on whether [the alleged inventor] recognized [his discovery] … and communicated this to a third party."). The Court concluded that "*Knorr* supports REG's position that [the inventor]'s communication … is legally significant because it shows that [the inventor] communicated the conception of his invention." *Id*. The same is true of Storms' oral communications to Lancium.

Specifically, in *Knorr*, the substance of a telephone call was found not to be hearsay "because the communication of the idea had legal significance as the basis for the conception of the invention." *REG*, 841 F.3d at 964 (citing *Knorr v.*

*Pearson*, 671 F.2d 1368, 1372-73 (C.C.P.A. 1982)). Knorr's reasoning made it clear that, for questions of inventorship, verbal acts like Storms' conversations with Lancium are not offered for their truth but have separate legal significance.

> We are persuaded that the conversation between the coinventors was a 'verbal act' affecting the legal rights of the parties. Evidence of what the coinventors said to each other is not offered to prove the truth of the statements themselves. Whether the [technology communicated] actually function[s] … is irrelevant; rather, the question is whether the ideas were communicated, the communication (as opposed to the truth) having legal significance.

*Knorr v. Pearson*, 671 F.2d 1368, 1372–73 (C.C.P.A. 1982).

The district court's exclusion of Storms' testimony about what he communicated to Lancium was not harmless error because the district court erroneously relied on this lack of evidence to find "that Plaintiffs have failed to prove by clear and convincing evidence that Storms communicated the subject matter claimed in the '433 patent to McNamara, or anyone else employed by Lancium, during the May 3, 2019 dinner." Appx21, ¶ 66. Had the district court allowed Storms to testify about what he communicated to Lancium at the dinner, the Court may have reached a different decision.

An offer of proof was not necessary because the "the substance was apparent from the context." Fed. R. Evid. 103(a)(2). First, BearBox argued the substance of Storms' expected testimony in its opening statement. Appx8010 at 18:15-21.

18

Second, the question and answer before the hearsay objection also reflected the

substance of Storms' excluded testimony:

> Q. And what did you tell Mr. McNamara during the
> cocktail reception?
>
> A. I told him some of the things that I was working on at
> BearBox. I told him kind of my general idea about
> renewable energy. I talked to him about the power
> distribution units that I was developing.
>
> MR. NELSON: I'm going to object. This is all hearsay.

Appx8025 at 79:17-25. *United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir.

2018) (a proponent may present the offer of proof in his questioning).

And Lancium's own explanation for its objection made it clear that the

substance of Storms' excluded testimony was apparent to everyone in the

courtroom:

> MR. NELSON: But the point of this is that he's relying
> that he in fact communicated this information, the
> statements that Mr. Storms is making that he
> communicated those statements to McNamara, which
> they then are going to turn around and say is part of the
> basis of their claim that Mr. McNamara, Mr. Cline and
> Lancium misused that information and put it into a patent
> application.

80:24-81:9. *United States v. Naholi*, 911 F.3d 897, 901 (8th Cir. 2018) ("The

record indicates no uncertainty from the court about the nature of the evidence

being elicited.").

Finally, Lancium argues that even if improperly excluded it was harmless error because an alleged inventor's story is unimportant. Red Br. at 53-54. This is incorrect. "At bottom, the goal of the analysis is to determine 'whether the inventor's story is credible.'" *NFC Tech., LLC v. Matal*, 871 F.3d 1367, 1372 (Fed. Cir. 2017). The relevance of Storms' testimony was not the truth of what he communicated to Lancium, but the fact that he communicated that information to Lancium, and the district court erred when it excluded this evidence.

### 2.    The district court considered less than all the evidence presented and what it did consider it analyzed piecemeal rather than as a whole

While the district court erred in excluding half of Storms' inventorship story, the other half was not considered. Lancium continues its crusade against the overall relevance of an alleged inventor's conception story, even though that is where an inventorship determination begins. *Blue Gentian, LLC v. Tristar Prod., Inc.,* 70 F.4th 1351, 1363 (Fed. Cir. 2023) (the analysis is "aimed at determining whether [the purported inventor's] story is credible overall.). To determine whether the inventor's story is credible requires knowing and considering the story.

The district court cited in the background of its final decision two of the 31 pages of trial transcript that included the portion of Storm's conception testimony that was not excluded as hearsay. Blue Br. at 52-53. Lancium suggests this is of no moment because we must accept that the district court contemplated the other 29

pages of testimony because it "need not cite each piece of evidence it considered." Red Br. at 48, 59; citing *General Electric Co. v. Wilkins*, 750 F.3d 1324, 1331 (Fed. Cir. 2014). In *General Electric*, however, the district court was found to not have erred because it "expressly assessed witness testimony" and "catalog[ued] the many problems with *each piece* of purportedly corroborating evidence." *Id.* (emphasis added). Here, the district court did no such thing, expressly assessing and cataloging only two of 31 pages of Storms' (allowed) testimony.

### 3. The district court impermissibly analyzed the claim elements in isolation rather than in combination

Lancium first argues that the district court improperly analyzed claim elements in isolation only because it "mirror[ed] the analysis Plaintiffs present[ed] in their post-trial brief." Red Br. at 57. Even if true, this would not excuse the district court's misapplication of the law. Regardless, BearBox did no such thing. *See, e.g.*, Appx7104-7105, Appx7113-7114.

Lancium next argues that the district court did *not* analyze the claim elements in isolation because the claim elements "build on each other." Red Br. at 57. While true that many claim elements incorporate earlier-recited elements, the district court's analysis does not consider this. For example, element [b4] recites "provide instructions to the set of computing systems to perform one or more computational operations based on the performance strategy." The claimed "performance strategy," we know from element [b3], is "based on a combination

of at least a portion of the power option data and at least one condition in the set of [monitored] conditions" as recited in element [b2].

The district court's analysis supporting its finding in Section F(1)(d), titled "Element [b4]," however, says nothing about the earlier incorporated "power option data" or "monitored conditions" elements. Appx37-39, ¶¶ 111-114. The district court states only that "Storms Email does not meet element [b4] … for two reasons." First, incorrectly applying a reduction to practice standard, because "Plaintiffs did not otherwise proffer evidence establishing that the BearBox System could individually control the system of 272 miners" and, second, after excluding Storms' testimony as hearsay, because "Storms did not communicate element [b4] prior to Defendants' independent conception." *Id*. At no point does the district court consider, or even use the words "power option data" or "monitored conditions." *Id*. This was error.

The error is further illustrated in the district court's explanation of Lancium's purported independent conception of element [b4], stating "as disclosed in [Lancium's] '632 Application filed in January 2018, [Lancium] had conceived of a system where the set of computer systems issued instructions to perform computational operations based on a performance strategy derived from monitored conditions." For element [b4], then, the district court credited Lancium with an

22

independent conception date of at least January 2018 (and a reduction to practice of October 2018). Appx38-39, ¶¶ 113. This was also error.

Element [b4] recites "providing instructions … based on the performance strategy." The "performance strategy" is based on the recited "power option data" and at least one condition in the set of "monitored conditions." Lancium admitted that it did not conceive of "limitations relating to … power option data" and combinations involving those limitations until approximately between *August 2019 and October 2019*. Appx8855. Ehsani, Lancium's expert, repeated this at trial, testifying that an email dated August 27, 2019 constituted Lancium's "flash of insight" that led to the conception of that claimed combination. Appx8181-8182 at 695:20-696:23; Appx12344.

That the district court credited Lancium with conceiving of the claimed "performance strategy" in January 2018, even though the claimed "performance strategy" must be based on "power option data," which is an element Lancium concedes it did not conceive of until at least August 2019, is emblematic of the district court's flawed analysis. A conclusion that credits Lancium with a conception date *20 months before* even Lancium believed it conceived of it cannot be the correct one. This is not the only time the district court made this mistake. Blue Br. at 56-58.

23

#### 4.    The district court's prior independent conception findings for Lancium were also piecemeal and not corroborated

Several of the district court's independent conception findings, several of which were dispositive of inventorship of individual claim elements, were uncorroborated. These findings relied exclusively on the purportedly credible testimony of Cline, who had previously been sued for breaching a non-disclosure agreement and flip-flopped on critical trial testimony (which Lancium did not even attempt to rehabilitate). Blue Br. at 58. Lancium argues, without citation, that prior independent conception findings do not need to be corroborated. This is incorrect. *Blue Gentian, LLC v. Tristar Prod., Inc.*, 70 F.4th 1351, 1362 (Fed. Cir. 2023).

Lancium also argues that the district court's findings based on Cline's testimony *were* corroborated, citing to one paragraph in the district court's final decision concluding that Lancium independently conceived of element [b3], the "performance strategy" limitation. Appx31, ¶ 97. But in that paragraph the district court states that it is relying on Cline's uncorroborated testimony in granting Lancium a January 2018 independent conception date, and an October 2018 reduction to practice:

> Cline credibly testified that, by no later than October 2018, Lancium's system at its Thomas Road R&D Facility was monitoring conditions including power price, Bitcoin price, network and global hashrate, LMP, ERCOT parameters, and weather conditions to determine a performance strategy based on whether it was profitable to mine Bitcoin.

*Id.*

Again, element [b3] recites "determining a performance strategy," but that performance strategy is "responsive to receiving power option data."

> [b3] *responsive to receiving the power option data*, determine a performance strategy for the set of computing systems based on a combination of at least a portion of the power option data and at least one condition in the set of conditions…

Appx7, ¶ 20.

Lancium admits that it did not conceive of "responsive to receiving power option data," or any combination including that limitation until "between approximately August 2019 and October 2019." Appx8855. The district court's failure to corroborate Cline's testimony, coupled with its impermissible element-wise approach, however, granted Lancium a January 2018 conception date. This was error. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("a trial judge may not 'insulate his findings from review by denominating them credibility determinations'; if documents or objective evidence contradict the witness's story, clear error may be found even in a finding purportedly based on a credibility determination.").

### 5. The district court applied a heightened, reduction-to-practice standard to BearBox's conception evidence

Lancium does little to support its argument that the district court did not apply a heightened, reduction to practice-like standard to its evaluation of

BearBox's conception evidence. Lancium first blames BearBox for asking the district court to apply a reduction to practice standard for conception. BearBox did no such thing. BearBox argued that Storms completed the mental part of invention and in doing so conceived of the claim elements recited in the '433 Patent. BearBox noted that the district court could *also* support a conception finding if it agreed that Storms reduced his invention to practice. Appx7105 ("In addition [to conceiving of the invention], Storms reduced his system to practice…"); Appx8183 at 700:1-3 ("For conception, Storms need only have a definite idea of his invention. But he had more than that, he built a simulation and it worked."). At no point did BearBox argue that a reduction to practice finding was a necessary element of conception. The district court, however, incorrectly analyzed the evidence as though it was, even citing a reduction to practice case as support for application of the test for conception. See, e.g. Blue Br. at 63.

Second, Lancium admits the district court's mistake, but attempts to trivialize it saying that BearBox "latched onto a sentence" in which the district court reasoned that Storms did not conceive of certain elements because BearBox "did not proffer evidence" that Storms' simulation using a single Bitcoin miner "could individually control the system of 272 miners." Red Br. at 63. This misrepresents the record. BearBox's opening brief cites to nine separate examples

of the district court applying the more stringent reduction to practice standard to BearBox's conception evidence. Blue Br. at 64-65.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs-Appellants request that this Court vacate the district court's final judgment and remand for further proceedings including a new trial on inventorship and conversion.

Date: November 8, 2023

Respectfully submitted,

  /s/ Benjamin T. Horton
Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

*Counsel for Plaintiffs-Appellants*
*BearBox LLC and Austin Storms*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1922

**Short Case Caption:** BearBox LLC v. Lancium LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>6199</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/08/2023

Signature: /s/ Benjamin T. Horton

Name: Benjamin T. Horton