

2121 N. Pearl Street, Suite 700
Dallas, TX 75201 U.S.A.
(214) 258-4200
Fax: (214) 258-4199

www.btlaw.com

Mark C. Nelson
Partner
214-258-4140
mnelson@btlaw.com

October 23, 2024

Jarrett B. Perlow
Clerk of Court
United States Court of Appeals
For The Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

      Re:    Case No. 23-1922, *BearBox LLC, et al. v. Lancium LLC, et al.*: Citation of Supplemental Authorities pursuant to Fed. R. App. P. 28(j)

Dear Mr. Perlow:

Pursuant to Federal Circuit Rule 34 and Fed. R. App. P. 28(j), Appellees Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr. provide this notice and citation of supplemental authority.

In further support of the arguments on pages 37-41 of their Brief, that "Plaintiffs' conversion claim fails because it was not deprived of any property," Appellees identify the following authority, which subsequently issued:

- *Matrix HVAC, LLC v. Daikin Applied Americas, Inc.*, No. 23-1669, 2023 WL 8701330, at *5 (E.D. La. Dec. 15, 2023) ("One of the essential elements of a conversion claim is deprivation of possession from the owner. Matrix does not allege it was deprived of possession of any particular thing. In fact, Matrix claims it still maintains possession of the information, but if Daikin continues to possess the information, Matrix will lose a competitive advantage. Accordingly, the Court finds that Matrix's claim for conversion is deficient." (internal citations omitted))

- *Hospital Housekeeping Systems, LLC v. Calvey*, No. 23-1309, 2024 WL 263512, at *5 (E.D. La. Jan. 24, 2024) ("As the magistrate judge rightly held, the proposed complaint fails to allege that plaintiff was deprived of possession of anything. Rather, plaintiff appears to claim that it still maintains possession of the purportedly confidential information, but that Ochsner also maintains possession of that information. This is insufficient to state a plausible conversion claim.")

Atlanta  Boston  California  Chicago  Delaware  Indiana  Michigan  Minneapolis  Nashville  New Jersey
New York  Ohio  Philadelphia  Raleigh  Salt Lake City  South Florida  Texas  Washington, D.C.

Page 2
October 23, 2024

Copies of these authorities have been emailed to counsel for Appellants BearBox LLC and Austin Storms with a copy of this letter.

                                                                Respectfully submitted,

                                                                  */s/ Mark Nelson*

                                                                Mark Nelson

Enclosures

CC:    Benjamin T. Horton (bhorton@marshallip.com)
         John R. Labbe (jlabbe@marshallip.com)
         Raymond R. Ricordati, III (rricordati@marshallip.com)
         Chelsea M. Murray (cmurray@marshallip.com)

2023 WL 8701330
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

MATRIX HVAC, LLC
v.
DAIKIN APPLIED AMERICAS, INC., et al.

CIVIL ACTION NO. 23-1669
|
Signed December 15, 2023

**Attorneys and Law Firms**

[Chadwick J. Mollere](), [Charles Arne Nunmaker](), Johnson, Gray, McNamara, LLC, New Orleans, LA, for Matrix Hvac, LLC.

[Jason A. Culotta](), [Samantha Shear](), Jones Walker LLP, New Orleans, LA, for Daikin Applied Americas, Inc., et al.

SECTION: "J"(4)

**ORDER AND REASONS**

[CARL J. BARBIER](), UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is a *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 6)** filed by Defendant, Daikin North America, LLC, an opposition thereto (Rec. Doc. 9) filed by Plaintiff Matrix HVAC, LLC, and Defendant's reply (Rec. Doc. 14). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff, Matrix HVAC, LLC ("Matrix"), is a Louisiana limited liability company that provides HVAC goods and services. Matrix's sole member and manager is Leif Wismar, a citizen and resident of Louisiana. Defendant, Daikin North America, LLC ("Daikin") is a Delaware corporation with a principal place of business in Texas. This case arises from Matrix's claim that its former employee, who eventually left Matrix to work for Daikin, provided trade secrets and confidential information regarding a new Matrix product to Daikin.

In 2019, after approximately ten months of research and development, several of Matrix employees, including Annirudha Joshi, developed a product ("the Matrix Product") that could integrate Daikin's condenser with any hot gas heat coils on the market. Matrix marketed the product to potential customers, including Daikin, by distributing brochures and giving demonstrations on the advantages and applications of the product. However, Matrix withheld the confidential details and properties of the product.

On February 7, 2020, Mr. Joshi resigned from Matrix and accepted employment with Daikin. On May 19, 2022 representatives of Matrix, Leif Wismar and Dario Cutura, attended a Daikin factory tour where Daikin presented a slideshow that included a way to control and add a hot gas reheat coil to any Daikin product, which Matrix alleges was based on the Matrix Product. On that same occasion, Matrix alleges that a Daiken representative told a Matrix employee that, "we took this from Leif." Matrix asserts Mr. Joshi acquired knowledge of numerous trade secrets and confidential information of the product he helped develop while employed with Matrix, resigned and accepted employment with Daikin, and after leaving his employment, knowingly disclosed such trade secrets and confidential information to Daikin. Then, Daikin began publicizing and marketing products, means, and methods that employed information associated with the Matrix Product.

On May 17, 2023, Matrix filed this complaint against Daikin arguing that Daikin's development of its own product to integrate the Daikin condenser is the result of the misappropriation of trade secrets and confidential information. (Rec. Doc. 1, at 2). In Count One, Matrix contends that the "concept, design, manufacture, and implementation" of the product are trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA"). *Id.* at 4-7. In Count Two, Matrix claims that Daikin's alleged misappropriation violates the Louisiana Unfair Trade Practices Act ("LUPTA"). *Id.* at 7-8. Count Three alleges that Daikin's product constitutes a wrongful taking and conversion actionable under 🚩[Louisiana Civil Code article 2315](). *Id.* at 8. In Count Four in the alternative, Matrix avers Daikin has been enriched without cause at the expense and impoverishment of Matrix under [Louisiana Civil Code article 2298](). *Id.* at 8-9.

**\*2** In the instant motion, Daikin asserts that this Court should dismiss all the claims against them under Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Rec. Doc. 6). Specifically, Daikin asserts Matrix has failed to state a claim for trade secret theft because it alleges no trade secret with specificity or efforts to maintain the secrecy of that information, does not identify any misappropriation, and otherwise states no facts or practices which contemplate an unfair trade practice as contemplated by LUTPA, or a conversion or unjust enrichment under the Louisiana Civil Code. *Id.* at 1. Daikin further argues Matrix's conversion claim should be dismissed because it is preempted to the extent it is based on the theft of trade secrets. *Id.* at 2. Finally, Daikin avers Matrix's unjust enrichment claim should be dismissed because it mirrors the LUTSA and LUTPA claims, and a plaintiff cannot proceed with an unjust enrichment claim when there is another remedy available. *Id.* at 3.

## LEGAL STANDARD

To survive a Rule12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

**A. Louisiana Uniform Trade Secrets Act ("LUTSA") Claim**

To plead a plausible claim under LUTSA, a plaintiff must allege "(a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation." *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)). Daikin argues that Matrix's LUTSA claim must be dismissed because the Complaint fails to establish each of the three elements of a LUTSA claim. (Rec. Doc. 6-1).

As to the first element, Daikin argues that Matrix fails to reasonably identify any trade secret or allege facts sufficient to establish it took reasonable measures to protect that information. *Id.* at 5. LUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process that:"

a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La. R.S § 51:1431(4). Therefore, a trade secret must both derive independent economic value and be subject to reasonable efforts to maintain its secrecy.

"To allege a trade secret, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain the boundaries within which the secret lies. *Am. Biocarbon, LLC v. Keating*, 20-259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)). "A trade secret 'is one of the most elusive and difficult concepts in the law to define.' " *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 613 (5th Cir. 2011) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)). "Whether something is a trade secret is a question of fact." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (citations omitted).

**\*3** Here, Matrix alleges that, after research and testing for ten months, it created an "innovative and unique" product (the Matrix Product) that combines Daikin's VRF Heat Pump Condensing Unit with a Carrier Air Handling Unit and a Hot Gas Reheat Coil for Dehumidification Control" (Rec. Doc. 1, at 3). After the ten months of product development, Matrix then notified potential customers about the Matrix Product, created brochures about the advantages and applications of the Matrix Product, and demonstrated the product to Daikin's regional sales manager, "without disclosing the confidential details and properties" of the product. *Id*. Matrix argues that these allegations, on their face, establish that Matrix created a unique and innovative product and that Matrix safeguarded and protected the confidentiality of the product's design and details. (Rec. Doc. 9, at 5-6).

As noted above, LUTSA includes compilations as an example of a type of "trade secret." See La. R.S. § 51:1431(4). "[E]ven if all of the information is publicly available, a unique combination of that information which adds value to the information also may qualify as a trade secret." *Rain CII Carbon, LLC v. Kurczy*, 12-2014, 2012 WL 3577534, at \*3 (E.D. La. 2012) (quoting *Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003)). Therefore, the Court finds that Matrix sufficiently pled that the Matrix Product could be subject to LUTSA protection, because the complaint alleges that Matrix developed a compilation of products (heat pump, air handling unit, and gas reheat coil) that derived economic value from not being generally known.

Next, the Court must determined whether Matrix sufficiently alleged that the Matrix Product is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *See* La. R.S § 51:1431(4)(b). In addition to noting that its representatives did not disclose confidential details of the product at the presentation to Daikin, Matrix alleges broadly that it "has carefully guarded these trade secrets and confidential information, and continues to do so, and there has been no public disclosure of these trade secrets and confidentialities by Matrix." (Rec. Doc. 1, at 6). Comment (f) of § 51:1431 provides, in part:

> Reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on a "need to know basis," and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

"The efforts required to maintain secrecy are those reasonable under the circumstances, and courts do not require extreme and unduly expensive procedures be taken to protect trade secrets." *Tubular Threading, Inc. v. Scandaliato*, 443 So. 2d 712, 714 (La. App. 5 Cir. 1983). "A disclosure of a trade secret to others who have no obligation of confidentiality extinguishes the property right in the trade secret." *Sheets v. Yamaha Motors Corp.*, 849 F.2d 179, 183–84 (5th Cir. 1988) (citing *Ruckelshaus v. Monsanto Company*, 467 U.S. 986, 1002 (1984)).

Here, Matrix admits that it developed advertising brochures describing the Matrix Product without disclosing the confidential details and properties of the Product. It also states that it demonstrated the Matrix Product to Defendant Daikin "without disclosing the confidential details and properties" of the product. (Rec. Doc. 1, at 3). However, Matrix knowingly discussed and demonstrated the product to Defendant Daikin and does not allege that Daikin had any obligation of confidentiality. Matrix also alleges that the theft of the trade secret occurred when Mr. Joshi knowingly disclosed the trade secrets to Daikin after leaving his employment with Matrix. (Rec. Doc. 1, at 5). Matrix claims, in conclusory terms, that Mr. Joshi and Daikin knew that Matrix regarded the Matrix Product design as its trade secret and confidential information. *Id*. at 6. However, Matrix does not provide any factual support of this contention. It does not claim what Matrix did to advise employees, including Mr. Joshi, of the existence of the trade secret, limited access to the Matrix Product to employees on a "need to know basis," controlled access to the product, or created a confidentiality agreement for employees or for Daikin.

**\*4** Matrix argues that it "affirmatively alleged that it safeguarded and protected the confidentiality of the Product design and details, and that its demonstration of the Product did not disclose any confidential details." (Rec. Doc. 9, at 6). Matrix contends that this affirmative allegation, which must be taken as true for Rule 12 purposes, is that "Matrix

did not disclose the confidential details and properties of the Product." *Id.* at 7. However, categorizing a product as a trade secret does not just require non-disclosure; it requires efforts to maintain secrecy that are reasonable under the circumstances. In this case, Matrix has not alleged any specific efforts or steps taken to protect the Matrix Product, let alone efforts that the Court could determine were reasonable under the circumstances. Accordingly, the Court finds that Matrix failed to sufficiently allege a trade secret, and therefore Matrix's LUTSA claim must be dismissed.

### B. Louisiana Unfair Trade Practices Act ("LUTPA") Claim

Next, Daikin argues that Matrix fails to state a claim for LUTPA because it fails to allege that the information at issue was protected by an agreement limiting its use or disclosure. (Rec. Doc. 6-1, at 12). LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405(A). It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct. § 51:1409(A). A practice is unfair under LUTPA only when "the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (internal quotations omitted); *see also Monroe v. McDaniel*, 207 So. 3d 1172, 1180 (La. App. 5 Cir. 2016) ("[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct.' " (quoting Ch*eramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010))). "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *IberiaBank*, 907 F.3d at 839.

An employer may recover under LUTPA when "a former employee breaches his duty not to use his former employer's confidential information." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (quoting *L-3 Commc'ns Westwood Corp. v. Robichaux*, 2008 WL 577560, at *5 (E.D. La. Feb. 29, 2008)) ("while LUTSA governs most claims of misappropriation, LUTPA recognizes a claim for breach of fiduciary duty that rests on the misappropriation of information that is confidential but not a trade secret"). To prevail on a LUTPA claim based on this breach of duty, a plaintiff must prove: "(1) that it possesses knowledge or information that is not generally known; (2) that it communicated the knowledge or information to the defendant under an express or implied agreement limiting the defendant's use or disclosure of the information; and (3) that the defendant used or disclosed the knowledge or information in violation of the confidence, resulting in injury to the plaintiff." *Ruby Slipper Cafe, LLC v. Belou*, 18-1548, 2019 WL 1254897, at *7 (E.D. La. Mar. 19, 2019) (internal citations omitted).

In Count Two of the Complaint, Matrix alleges that it has suffered an ascertainable loss of money and proprietary property because of Daikin's knowing use and employment of unfair and deceptive practices in the appropriation and use of Matrix's confidential information and trade secrets (the design and production of the Matrix Product), without Matrix's consent. (Rec. Doc. 1, at 7). Matrix claims that Daikin's conduct constitutes unfair competition, in violation of LUTPA. *Id.* at 8. Matrix does not claim that Mr. Joshi's actions constitute unfair competition. (Rec. Doc. 1, at 7-8). Therefore, the Court will not consider whether Matrix stated a potential claim regarding Mr. Joshi's breach of fiduciary duty as a Matrix employee.

**\*5** In the instant motion, Daikin argues that Matrix fails to allege a specific trade secret not generally known and that any information communicated to Daikin was under an agreement limiting the use or disclosure of the information. (Rec. Doc. 6-1, at 13). However, LUTPA applies to confidential information that is not necessarily a trade secret. *L-3 Commc'ns Westwood Corp. v. Robichaux*, 06-279, 2008 WL 577560, at *5 (E.D. La. Feb. 29, 2008) (quoting *Defcon, Inc. v. Webb*, 687 So. 2d 639, 643 (La. App. 2 Cir. 1997)) ("The Louisiana Second Circuit Court of Appeal has stated that 'the misappropriation of confidential information, although not technically a trade secret ... may serve as a basis for relief' under LUTPA."). Second, Matrix's complaint alludes to the fact that Daikin knowingly used confidential information and trade secrets surrounding the Matrix Product, but does not include sufficient detail for the Court to conclude whether there was an agreement between the Matrix and Daikin. Matrix's opposition also fails to provide that information to the Court.

Even more importantly, the Complaint does not explain exactly what actions or conduct by Daikin could constitute egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct, which would violate LUTPA. Instead, Matrix states, in conclusory fashion, that Daikin appropriated information

about the design and production of the Matrix Product. This allegation is insufficient for the Court to determine whether Daikin's conduct was unfair and violative of public policy. Accordingly, the Court finds that Matrix fails to state a claim under LUTPA.

### C. Conversion Claim

Third, Daikin argues that Matrix's claim for conversion should be dismissed because (1) to the extent the claim is based on the theft of trade secrets, it is preempted, and (2) to the extent the claim is based on confidential information, Matrix failed to allege that Daikin exercised exclusive control over the information or allege the theft of tangible property. (Rec. Doc. 6-1, at 2-3). Count Three alleges that Daikin's "knowing and wrongful appropriation and use for gain of the trade secrets, confidential information, and secrets of Matrix constitutes conversion, misappropriation, and other actionable delictual conduct under La. C.C. art. 2315." (Rec. Doc. 1, at 8)

Conversion is a delictual action which occurs when an individual (1) acquires possession of an object in an unauthorized manner; (2) removes the object from its original location and places it in another location with the intent to exercise control over the object; (3) the acquired possession is unauthorized; (4) the individual withholds possession from the owner of the object; (5) the object is either altered or destroyed; (6) the object is used improperly; or (7) the individual asserts ownership over the object. *Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 721 So.2d 853, 857 (La. 1998) (citing FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 1–2, at 3 (1998)). The action of conversion constitutes an act of ownership over another individual's property that is inconsistent with the true owner's rights. *Louisiana Health Care Grp., Inc. v. Allegiance Health Mgt., Inc.*, 32 So.3d 1138, 1143 (La. App. 3 Cir. 2010).

LUTSA preempts a claim for conversion of trade secrets. *Brand Services, L.L.C. v. Irex Corp.*, 909 F.3d 151, 158 (5th Cir. 2018) ("These cases appear consistent with the plain text and stated purpose of LUTSA's preemption provision: to preempt tort claims 'pertaining to civil liability for misappropriation of a trade secret' "). However, the Court concluded above that Matrix failed to sufficiently allege a trade secret in this case, so preemption does not apply. *Id.* at 159 ("LUTSA does not preempt civilian law claims for conversion of information that does not constitute a trade secret under LUTSA").

To the extent that Matrix's conversion claim is based on the theft of confidential information, Matrix also fails to state a claim. One of the essential elements of a conversion claim is deprivation of possession from the owner. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985) ("A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise of assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time"). Matrix does not allege it was deprived of possession of any particular thing. In fact, Matrix claims it still maintains possession of the information, but if Daikin continues to possess the information, Matrix will lose a competitive advantage. (Rec. Doc. 1, at 5-7). Accordingly, the Court finds that Matrix's claim for conversion is deficient.

### D. Unjust Enrichment Claim

**\*6** Finally, Daikin argues that Matrix's unjust enrichment claim should be dismissed because Matrix has asserted other causes of action based on the same set of facts. (Rec. Doc. 6-1, at 16). In Count Four, Matrix alleges that, in the alternative to the other counts, Daikin has been enriched without cause at the expense and impoverishment of Matrix, and under Louisiana Civil Code art. 2298, Matrix is entitled to damages. (Rec. Doc. 1, at 8-9).

Pursuant to Louisiana Civil Code article 2298, a person who has been enriched without cause at the expense of another person is bound to compensate that person. La. Civ. Code art. 2298. Article 2298 further states that the remedy of unjust enrichment is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule. *Id.* To establish a claim of unjust enrichment, the plaintiff must prove the following elements:

> (1) There must be an enrichment,
> (2) there must be an impoverishment,
> (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the

action will only be allowed when there is no other remedy at law.

[Minyard v. Curtis Prods., Inc.](), 205 So. 2d 422, 432 (La. 1968). Generally, the existence of other available claims will preclude an unjust enrichment claim. *Liberty Mutual Fire Ins. Co. v. Shaw Group, Inc.*, No. 20-871, 2022 WL 896804 at *23 (M.D. La. Mar. 25, 2022) (citations omitted).

However, as Matrix notes, Federal Rule of Civil Procedure 8(d) allows a party to plead separate, inconsistent claims in the alternative. Fed. R. Civ. Proc. 8(d). Specifically, Rule 8(d) provides:

> A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient .... A party may state as many separate claims or defenses as it has, regardless of consistency.

Although there are exceptions at the pleading stage when the validity of a contract is at issue; *see* *Perez v. Utility Constructors, Inc.*, No. 15-4675, 2016 WL 5930877, at *2-4 (E.D. La. Oct. 12, 2016); *Schott, Trustee For Estate of InformMD, LLC v. Massengale*, No. 18-759, 2019 WL 4738795 at *16-17 (M.D. La. Sept. 27, 2019); the Fifth Circuit and Louisiana Supreme Court agree that if a plaintiff pleads alternative claims, such as contract or delictual claims, the plaintiff cannot maintain a cause of action for unjust enrichment on those same facts. *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443-444 (5th Cir. 2014);

*Walters v. Medsouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010); *see also Ruby Slipper Cafe, LLC*, 2019 WL 1254897, at *9 (dismissing unjust enrichment claim when Plaintiff also pursued claims under LUTSA and LUTPA). Here, no exception applies, and because Matrix has pled multiple claims including a delictual claim and claims under LUTSA and LUTPA, another remedy is available to Matrix. Therefore, Matrix is precluded from seeking recovery against Daikin on a claim of unjust enrichment.

## RECOMMENDATION

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 6)** is **GRANTED**. Plaintiff's LUTPA claim is **DISMISSED WITHOUT PREJUDICE** with leave to amend the deficiencies in this claim only within 21 days. Because amendment of the following claims would be futile, Plaintiff's LUTSA claim, conversion claim, and unjust enrichment claims are **DISMISSED WITH PREJUDICE.**

**All Citations**

Slip Copy, 2023 WL 8701330

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 263512
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

HOSPITAL HOUSEKEEPING SYSTEMS, LLC

v.

John CALVEY et al.

CIVIL ACTION No. 23-1309
|
Signed January 24, 2024

**Attorneys and Law Firms**

Byron A. Richie, Richie, Richie & Oberle, LLP, Shreveport, LA, Jeffrey Scott Loeb, Murphy J. Burke, III, Robert Edward Guidry, Loeb Law Firm, Mandeville, LA, Pamela W. Carter, Mia Jacque Lewis, Quintairos, Prieto, Wood & Boyer, P.A., Metairie, LA, Linda Estelle Gonzales, Geiger, Laborde & Laperouse, LLC, New Orleans, LA, for Hospital Housekeeping Systems, LLC.

Jennifer F. Kogos, Michael Andrew Foley, Connor Harris Fields, Jones Walker LLP, New Orleans, LA, for John Calvey et al.

### SECTION I

### ORDER & REASONS

LANCE M. AFRICK, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is plaintiff Hospital Housekeeping Systems, LLC's ("plaintiff") motion[1] to review the U.S. Magistrate Judge's ("magistrate judge") order[2] denying plaintiff's motion[3] for leave to file a second amended complaint. Defendants John Calvey ("Calvey") and Ochsner Clinic Foundation ("Ochsner") (collectively, "defendants") oppose[4] the motion. For the reasons that follow, the Court affirms the magistrate judge's order in part and reverses it in part.

### I. FACTUAL BACKGROUND

Plaintiff filed its initial complaint on April 19, 2023.[5] On April 20, 2023, plaintiff filed an *ex parte* motion for leave to file an amended complaint.[6] This Court granted[7] the motion, and the amended complaint was filed into the record.[8] As amended, the complaint alleges that, on August 1, 2015, plaintiff and Ochsner entered into a contract pursuant to which "[plaintiff] would provide and manage the facilitation of housekeeping services at multiple Ochsner ... facilities."[9] The contract allegedly contained a non-solicitation provision prohibiting Ochsner and plaintiff from soliciting each other's employees "for a period beginning at the start of the [c]ontract to twelve ... months after the termination of the [c]ontract."[10]

The first amended complaint further alleges that Calvey, the former Director of Environmental Services for plaintiff, entered an "Agreement Not to Compete" with plaintiff.[11] Pursuant to this agreement, Calvey allegedly agreed that, during his employment with plaintiff and for a period of two years after, he would not "directly or indirectly[ ] solicit the employees of plaintiff to leave the service of plaintiff or solicit and/or accept the business of any person or business entity for whom plaintiff rendered services at any time during the employment relationship."[12] Calvey also allegedly "agreed that he would not disclose any of the information concerning the business and affairs of [plaintiff]" and "to treat all such information as confidential."[13]

According to the first amended complaint, Ochsner informed plaintiff of its intent to terminate its contract with plaintiff effective August 1, 2021.[14] On July 31, 2021, "Calvey's employment with plaintiff ended."[15] Following Calvey's departure, plaintiff "learned that Ochsner employees/management asked plaintiff's former managers to apply for positions at Ochsner."[16] Calvey allegedly began working for Ochsner in its in-house housekeeping department on August 1, 2021.[17] The first amended complaint asserts claims for breach of an employment contract, breach of a non-compete agreement, and breach of a non-solicitation agreement.[18] It also alleges that "it is highly probabl[e] that [Calvey] is disclosing plaintiff's practices, procedures, methods, and trade secrets to [Ochsner]."[19]

**\*2** On October 10, 2023, defendants filed a motion[20] to strike or dismiss plaintiff's first amended complaint. On

October 12, 2023, plaintiff filed an *ex parte* motion to enroll new counsel,[21] which this Court granted.[22] Plaintiff's new counsel then filed a motion[23] for leave to file a second amended complaint, as well as an *ex parte* motion[24] to continue the submission date on defendants' motion to strike or dismiss until after the submission date on plaintiff's motion for leave to amend. Based on plaintiff's argument that the magistrate judge's decision on plaintiff's motion for leave to amend might render defendants' motion to strike or dismiss moot, the Court granted plaintiff's motion to continue.[25]

On January 4, 2024, the magistrate judge denied plaintiff's motion for leave to amend.[26] The magistrate judge held that granting plaintiff leave to file its second amended complaint would be futile because the second amended complaint fails to state a claim for breach of a non-solicitation agreement, fails to state a claim pursuant to the Louisiana Unfair Trade Practice and Consumer Protection Law ("LUTPA"), fails to state a claim pursuant to the Louisiana Uniform Trade Secrets Act ("LUTSA"), and fails to state a claim for conversion.[27]

Following the magistrate judge's ruling, the Court held a telephone conference to discuss the status of the case.[28] At the conference, plaintiff's counsel advised the Court of plaintiff's intent to appeal the magistrate judge's decision.[29] The Court set a briefing schedule for plaintiff's appeal,[30] and the parties timely filed the instant motion and response.

## II. STANDARDS OF LAW

### a. Review of a Magistrate Judge's Order

Rule 72 of the Federal Rules of Civil Procedure governs a district court's review of a magistrate judge's decision on a pretrial matter. Rule 72(a) requires a party who objects to a magistrate judge's ruling to "serve and file objections to the order within 14 days after being served with a copy."

Rule 72(a) provides that a district judge reviewing an order on a non-dispositive matter may "modify or set aside any part of the order that is clearly erroneous or contrary to law." A motion for leave to amend a complaint is non-dispositive. *PYCA Indus., Inc. v. Harrison Cnty Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996); *see also Dalrymple v. U.S. Postal Serv.*, 2020 WL 1181845, at *2 (E.D. La. Mar. 12, 2020) (Vance, J.) (collecting cases). "The district court may only find the magistrate judge's ruling clearly erroneous or contrary to law when the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.' " *McCallon v. BP Am. Prod. Co.*, No. 05-0597 c/w 05-0700, 2006 WL 3246886, at *2 (E.D. La. Nov. 8, 2006) (Fallon, J.) (quoting *Palacios Seafood, Inc. v. Piling, Inc.*, 888 F.2d 1509, 1513 (5th Cir. 1989)). Rule 72(a) further provides that "[a] party may not assign as error a defect in [a magistrate judge's non-dispositive order] not timely objected to."

### b. Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *United States ex rel. Lin v. Mayfield*, 773 F. App'x 789, 790 (5th Cir. 2019) (quotations omitted). A decision to grant leave to amend is within the discretion of the trial court. *Mayfield*, 773 F. App'x at 790. However, a "district court must possess a 'substantial reason' to deny a request for leave to amend." *Id.* (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)). The "futility of the amendment" is one such reason. *Id.* "[A]n amended complaint is futile 'if the complaint as amended would be subject to dismissal.' " *Rohi v. Brewer (In re ABC Dentistry, P.A.)*, 978 F.3d 323, 325 (5th Cir. 2020) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014)). Futility is evaluated "under the same standards as a dismissal under Rule 12(b)(6)." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 437 (5th Cir. 2021) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

## III. ANALYSIS

**\*3** Plaintiff takes issue with the magistrate judge's order on three different grounds. First, plaintiff argues that the magistrate judge "failed to liberally construe the proposed pleading in favor of plaintiff, as required by law."[31] Second, plaintiff asserts that the magistrate judge "confused the allegations of the [f]irst [a]mended [c]omplaint with

those of the [s]econd [a]mended [c]omplaint" with respect to allegations pertaining to the non-compete provision of Calvey's employment agreement."[32] Third, plaintiff contends that the magistrate judge erroneously "applied the law concerning the non-solicitation of *business clients* to this case, which involves the non-solicitation of *employees*."[33] Applying Rule 72(a)'s standard, the Court considers each of these arguments in turn.

### a. Liberal Construction of the Pleadings

As to plaintiff's first argument, the Court concludes that the magistrate judge did not clearly err by "fail[ing] to liberally construe the proposed pleading in favor of plaintiff[.]"[34] Plaintiff broadly suggests that the proposed second amended complaint "alleged sufficient facts to put defendants on notice of plaintiff's claims[.]"[35] However, the magistrate judge correctly applied the relevant legal standard in considering whether granting leave to amend would be futile. As stated, courts may deny leave to amend where the proposed amended complaint would be futile, meaning it would be subject to dismissal pursuant to Rule 12(b)(6). *See, e.g.*, ABC Dentistry, 978 F.3d at 325; Butler, 16 F.4th at 437.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). "[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." Hi-Tech Elec., Inc. v. T&B Constr. & Elec. Servs., Inc., No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing Lormand v. US Unwired, Inc., 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Plaintiff does not identify any specific instances in the magistrate judge's order where the magistrate judge failed to view the complaint "in the light most favorable to the plaintiff," "accept[ ] as true all well-pleaded factual allegations[,]" or "draw[ ] all reasonable inferences in the plaintiff's favor." Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004). According to defendants, plaintiff has waived its right to challenge any issues not specifically addressed in this appeal, including the magistrate judge's rulings as to plaintiff's LUTPA, LUTSA, and conversion claims.[36] However, in order to meaningfully evaluate plaintiff's general argument regarding the standard applied by the magistrate judge, the Court must consider the magistrate judge's analysis of specific claims. Having carefully reviewed the magistrate judge's order, the Court finds that the magistrate judge correctly determined that granting plaintiff leave to amend would be futile with respect to plaintiff's LUTPA, LUTSA, and conversion claims.

### i. LUTPA

**\*4** To begin, the Court finds no clear error and nothing contrary to law in the magistrate judge's futility determination as to plaintiff's proposed LUTPA claim. "LUTPA prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' " Matrix HVAC, LLC v. Daikin Applied Ams., Inc., No. 23-1669, 2023 WL 8701330, at *2 (E.D. La. Dec. 15, 2023) (Barbier, J.) (quoting La. Rev. Stat. § 51:1405(A)). "Louisiana courts have confined unfair practices to those which offend established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious." D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC, 463 F. Supp. 3d 713, 722 (E.D. La. 2020) (Fallon, J.) (cleaned up). "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." Id. at 722–23 (quoting Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir. 1993)). Further, there is "a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." Id. at 723 (cleaned up).

With respect to plaintiff's LUTPA claim, the proposed amended complaint alleges that Calvey converted plaintiff's "business practices and procedures, and internal business forms" containing "proprietary and confidential information" to his own and Ochsner's use and benefit.[37] It further alleges that these business practices, procedures, and internal

business forms remained in Ochsner's possession "after it had been represented to [plaintiff] that all such information and documents had been purged from Ochsner's records."[38]

Viewing these allegations in the light most favorable to plaintiff, the Court finds nothing in the magistrate judge's futility determination that amounts to clear error or that is contrary to law. The magistrate judge correctly held that the proposed pleading is devoid of any allegations suggesting that defendants' actions were sufficiently egregious to constitute a violation of LUTPA, particularly considering that "cases that have been decided under LUTPA have defined 'unfair trade practices' narrowly." *Target Const., Inc. v. Baker Pile Driving & Site Work, L.L.C.*, No. 12-1820, 2012 WL 5878855, at *5 (E.D. La. Nov. 20, 2012) (Fallon, J.).

As the magistrate judge explained, the proposed pleading in the instant case does not allege that the business practices and procedures or internal business forms were "unique to [plaintiff] as opposed to any other similar business."[39] It also does not allege that Calvey breached any fiduciary duty or ethical standard through his conduct. *Cf. Turner*, 989 F.2d at 1422 (explaining that "[w]hat offends the [LUTPA] statute in [many employer-employee] cases is the breach of a special relationship of trust between the employer and employee"). At most, the complaint alleges facts suggesting that Calvey breached his contractual duty to refrain from "using or disclosing [plaintiff's] confidential information except as required during the term of his employment with [plaintiff]."[40] As stated, there is "a great deal of daylight between a breach of contract claim and the egregious behavior the [LUTPA] statute proscribes." *D.H. Griffin Wrecking Co.*, 463 F. Supp. 3d at 723. Accordingly, the Court finds no clear error and nothing contrary to law in the magistrate judge's determination that plaintiff's proposed second amended complaint does not state a plausible LUTPA claim.

*ii. LUTSA*

The magistrate judge also did not clearly err in finding that the proposed second amended complaint fails to state a LUTSA claim. To plead a plausible LUTSA claim, a plaintiff must allege (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the actual loss caused by the misappropriation. *Matrix HVAC*, 2023 WL 8701330, at *2 (citing *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000)). "To allege a trade secret, the plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain the boundaries within which the secret lies." *Id.* (quoting *Am. Biocarbon, LLC v. Keating*, No. 20-259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (internal quotations omitted)).

**\*5** The proposed second amended complaint alleges that Calvey violated LUTSA by "convert[ing] to his own [and Ochsner's] use and benefit" plaintiff's "business practices and procedures, and internal business forms, all of which Ochsner has employed in the running and management of its own housekeeping service, and which proprietary and confidential information [p]laintiff entrusted to its former managers/employees, including [ ] Calvey."[41] The proposed complaint also alleges that plaintiff discovered its "business practices and procedures and internal business forms" were still in Ochsner's possession "after it had been represented to plaintiff that all such information and documents had been purged from Ochsner's records."[42]

Nowhere in the complaint does plaintiff "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge." *Matrix HVAC*, 2023 WL 8701330, at *2. Rather, the complaint refers vaguely to "business practices and procedures, and internal business forms," without specifying the subject matter of the trade secret.[43] Accordingly, the magistrate judge correctly determined that granting leave to amend would be futile with respect to the LUTSA claim. The Court finds no clear error and nothing contrary to law.

*iii. Conversion*

Likewise, the magistrate judge's holding regarding plaintiff's conversion claim is neither clearly erroneous nor contrary to law. To state a conversion claim pursuant to Louisiana law, a plaintiff must allege (1) acquisition of possession in an unauthorized manner; (2) removal of a chattel from one place to another with the intent to exercise control over it; (3) unauthorized transfer of possession of a chattel; (4) withholding possession from the owner; (5) alteration or

destruction of the chattel; (6) improper use of the chattel; or (7) assertion of ownership over the chattel. See 🚩*Quality Env't Processes, Inc. v. IP Petroleum Co., Inc.*, 219 So. 3d 349, 369 (La. App. 1st Cir. 2017) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 72 So. 2d 853, 857 (La. 1998)); 🚩*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 406 (E.D. La. 2016) (Engelhardt, J.). "One of the essential elements of a conversion claim is deprivation of possession from the owner." *Matrix HVAC*, 2023 WL 8701330, at *5 (citing 🚩*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985)).

As the magistrate judge rightly held, the proposed complaint fails to allege that plaintiff was deprived of possession of anything. Rather, plaintiff appears to claim that it still maintains possession of the purportedly confidential information, but that Ochsner also maintains possession of that information. This is insufficient to state a plausible conversion claim. *See Matrix HVAC*, 2023 WL 8701330, at *5. Accordingly, the Court finds no clear error and nothing contrary to law in the magistrate judge's order in this regard.

### b. Allegations Regarding Calvey's Non-Compete Agreement

As to plaintiff's second argument, the Court finds that plaintiff has failed to identify any "clearly erroneous action by the magistrate judge that materially affects the outcome of this litigation." *Gilbert v. Cates*, No. 17-4786, 2018 WL 4363590, at *4 (E.D. La. Sept. 13, 2018) (Milazzo, J.). According to plaintiff, the magistrate judge's conclusion that the second amended complaint restated the allegations related to the non-compete "arises only from a confusion of the allegations of the [f]irst and [s]econd [a]mended [c]omplaints."[44]

It is true that, in determining that the proposed second amended complaint reincorporated allegations pertaining to an alleged non-compete agreement between Calvey and plaintiff, the magistrate judge's order cited paragraph 18 of the first amended complaint rather than the proposed pleading.[45] But this mistake hardly undermines the magistrate judge's conclusion that granting leave to amend would be futile. As the magistrate judge correctly pointed out,[46] the first paragraph of the second amended complaint confusingly provides that it "restat[es] all previously filed complaints to specifically remove all claims based on the non-compete provisions of the Agreement Not to Compete entered into by [ ] Calvey and [plaintiff] on May 12, 2015[.]"[47] Even accepting that the second amended complaint removes any reference to the non-compete agreement between plaintiff and Calvey despite this confusing language, plaintiff does not convincingly explain how the magistrate judge's mistake would significantly affect the analysis around futility.

**\*6** Plaintiff argues only that, because one of the goals of the proposed second amended complaint was to remove the previously alleged claims against Calvey premised on the non-compete provision of his employment agreement, the magistrate judge's "mistake is significant."[48] Yet the decision to deny leave to amend was not predicated solely on the magistrate judge's understanding that the proposed amended complaint did not meet one of its stated goals. Rather, the decision was based on a number of findings, including the magistrate judge's findings that granting leave to amend as to the LUTPA claim, LUTSA claim, and conversion claim in the proposed second amended complaint would be futile.[49] Accordingly, the Court cannot conclude on the basis of this error that the magistrate judge's decision to deny leave to amend based on futility was clearly erroneous or contrary to law.

### c. Breach of the Non-Solicitation Agreement

However, with respect to plaintiff's third argument, the Court finds that the magistrate judge clearly erred in holding that permitting the second amended complaint to be filed would be futile as to plaintiff's claim that Ochsner breached its non-solicitation agreement with plaintiff. The magistrate judge's holding was predicated on the incorrect notion that, pursuant to § 23:921(C) of the Louisiana Revised Statutes, the non-solicitation agreement between plaintiff and Ochsner would only be enforceable if it contained a geographical restriction specifying the "parish or parishes, municipality or municipalities, or parts thereof."[50]

As plaintiff notes,[51] § 23:921(C) applies to agreements requiring those "employed as an agent, servant or employee" to refrain from soliciting *customers* from their employers. La. Rev. Stat. Ann. § 23:921(C). By its terms, the statute does not appear to apply to agreements like plaintiff's agreement with Ochsner. The non-solicitation agreement was an agreement between plaintiff and Ochsner not to solicit each other's *employees*, not customers. Moreover, the agreement does not

appear to qualify as an agreement between an employer and someone "employed as an agent, servant, or employee" since there is no indication that Ochsner was employed in any of these capacities by plaintiff. *Id.* § 23:921(C).

Defendants contend that the magistrate judge's ultimate conclusion regarding the futility of the proposed amended claim for breach of the non-solicitation agreement is not clearly erroneous because it can be upheld on a different and independent basis.[52] According to defendants, "there is no allegation in the proposed amended pleading ... that Ochsner successfully solicited Calvey—or any other HHS employee it identifies."[53] More specifically, defendants assert that the proposed second amended complaint's allegations are insufficient to state a claim for breach of the non-solicitation provision of the Ochsner contract, noting that "there is no allegation that Ochsner *actually solicited* Calvey, or that Ochsner actually hired any [of plaintiff's] employee(s) whom it also *solicited.*"[54]

The Court disagrees. The proposed second amended complaint does state a claim for breach of the non-solicitation provision of the Ochsner contract. As explained, the proposed complaint alleges that plaintiff's contract with Ochsner contained a non-solicitation provision prohibiting Ochsner and plaintiff from soliciting each other's employees for twelve months after termination of the contract.[55] The proposed complaint also alleges that "Ochsner actively solicited [plaintiff's] management employees for positions as Ochsner employees, and has hired at least three HHS employees, namely [ ] Calvey, Louisa Spears, and Edward Barnes."[56]

**\*7** To state a plausible breach of contract claim pursuant to Louisiana law, plaintiff must allege that (1) a contract existed between the parties; (2) defendant breached that contract; and (3) plaintiff suffered damages as a result. *D.H. Griffin Wrecking Co.*, 463 F. Supp. 3d at 727. Defendants suggest that, in order to find that the second amendment states a breach of contract claim, the Court would need to make a "speculative leap" to infer from Calvey's employment by Ochsner and from Ochsner's alleged recruitment of unidentified managers, that "it follows that Ochsner solicited Calvey (as opposed to Calvey seeking out employment with Ochsner, which is exactly what happened)."[57] As discussed, the second amended complaint states that a contract existed between the parties which included a non-solicitation of employees agreement, that Ochsner breached that contract by soliciting plaintiff's management employees, and that plaintiff suffered damages as a result. The Court is not persuaded that any "speculative leap" is required to find that plaintiff has stated a breach of contract claim.[58] Accordingly, with respect to this claim, permitting plaintiff to amend its complaint would not be futile. The magistrate judge's denial of leave to amend on this basis was clearly erroneous.[59]

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the magistrate judge's order is **AFFIRMED IN PART** and **REVERSED IN PART**. Plaintiff's second amended complaint shall be filed into the record. The proposed pleading states a plausible breach-of-contract claim against Calvey based on Calvey's agreement with plaintiff to refrain from using or disclosing confidential information. It also states a plausible breach-of-contract claim against Ochsner based on the non-solicitation agreement in Ochsner's alleged contract with plaintiff. However, plaintiff's LUTPA, LUTSA, and conversion claims are **DISMISSED WITH PREJUDICE** as futile.

**IT IS FURTHER ORDERED** that defendants' motion[60] to strike or dismiss plaintiff's first amended complaint is **DISMISSED AS MOOT** in light of the analysis set forth herein.

**All Citations**

Slip Copy, 2024 WL 263512

### Footnotes

| 1 | R. Doc. No. 52. |
|---|---|
| 2 | R. Doc. No. 48. |
| 3 | R. Doc. No. 31. |
| 4 | R. Doc. No. 54. |
| 5 | R. Doc. No. 1. |
| 6 | R. Doc. No. 3. |
| 7 | R. Doc. No. 4. |
| 8 | R. Doc. No. 5. |
| 9 | *Id.* ¶ 4. |
| 10 | *Id.* ¶ 5. |
| 11 | *Id.* ¶ 13. |
| 12 | *Id.* ¶ 19. |
| 13 | *Id.* ¶ 20. |
| 14 | *Id.* ¶ 8. |
| 15 | *Id.* ¶ 15. |
| 16 | *Id.* ¶ 16. |
| 17 | *Id.* ¶ 17. |
| 18 | *Id.* at 1. |
| 19 | *Id.* ¶ 23. |
| 20 | R. Doc. No. 25. |
| 21 | R. Doc. No. 27. |
| 22 | R. Doc. No. 29. |
| 23 | R. Doc. No. 31. |
| 24 | R. Doc. No. 32. |
| 25 | R. Doc. No. 33. |
| 26 | R. Doc. No. 48. |
| 27 | *Id.* at 9–14. |
| 28 | R. Doc. No. 50. |

29  *Id.* at 1.

30  *Id.*

31  R. Doc. No. 52-1, at 1.

32  *Id.* at 1, 4.

33  *Id.* at 1.

34  *Id.* at 1.

35  *Id.* at 2–3.

36  R. Doc. No. 54, at 2–4.

37  R. Doc. No. 31-2, ¶ 17.

38  *Id.* ¶ 18.

39  R. Doc. No. 48, at 10.

40  R. Doc. No. 31-2, ¶ 16.

41  *Id.* ¶ 17.

42  *Id.* ¶ 18.

43  *Id.* ¶ 17.

44  R. Doc. No. 52-1, at 4.

45  *See* R. Doc. No. 48, at 9–10.

46  *See id.*

47  R. Doc. No. 31-2, ¶ 1.

48  R. Doc. No. 52-1, at 4.

49  *See generally* R. Doc. No. 48, at 9–14.

50  *Id.* at 10–12.

51  R. Doc. No. 52-1, at 5.

52  R. Doc. No. 54, at 4.

53  *Id.* at 5.

54  *Id.* (quoting R. Doc. No. 25-1 (memorandum in support of motion to dismiss), at 8–9) (emphasis in original).

55  R. Doc. No. 31-2, ¶ 5.

56  R. Doc. No. 31-2, ¶ 11.

| | |
|---|---|
| 57 | R. Doc. No. 54, at 5 (quoting R. Doc. No. 25-1, at 8–9). |
| 58 | At this early stage, the Court expresses no view as to whether a motion for summary judgment on this question would be appropriate. |
| 59 | The Court notes defendants' request that the Court condition any grant or partial grant of leave to amend on plaintiff's payment of any attorneys' fees incurred by defendants in defending against the now-removed allegations relating to the non-compete in Calvey's contract with plaintiff. *See* R. Doc. No. 54, at 6 n.7. Defendants do not cite the authority pursuant to which they seek attorneys' fees, and the Court does not find such fees to be appropriate. |
| 60 | R. Doc. No. 25. |

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.